ALLIS-CHALMERS MANUFACTURING COMPANY, Appellant, vs. WISCONSIN EMPLOYMENT RELATIONS BOARD, Respondent.

*March 9—April 12, 1949.*

For the appellant there were briefs by *Lines, Spooner & Quarles,* attorneys, and *John G. Kamps* of counsel, all of Milwaukee, and oral argument by *Mr. Kamps.*

For the respondent there was a brief by the *Attorney General, Stewart G. Honeck,* deputy attorney general, and *Beatrice*

*Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert.*

WICKHEM, J.   The company is a foreign corporation engaged in the manufacturing business in Wisconsin.   During the war it operated a war plant in Milwaukee known as the Supercharger Works.   The machinist union was the certified representative for the toolroom employees in this factory. From April, 1944, to September 22, of the same year, the union and the company engaged in collective-bargaining negotiations and in the course of these reached an agreement upon all items in dispute except wages.   On September 19, 1944, at a meeting before a commissioner of the United States conciliation service, the latter advised the parties that he would have to refer the matter to the War Labor Board as a dispute for its decision.   The parties then agreed to submit the matter on briefs to a hearing officer rather than to a tripartite panel and filed a stipulation to that effect.   Until a short time before the September 22d meeting one Mackey was works manager for the company.   There is evidence that he repeatedly stated that, while the company could not voluntarily adopt the rates established by the War Labor Board because of the effect upon its other plants, it would put them into effect if ordered by the War Labor Board.   The real dispute appears to have been whether the rates established by the War Labor Board on the basis of areas were applicable to the plant in question and that is the matter that was intended to be and that was submitted to the War Labor Board.   The stipulation heretofore referred to was drafted by the federal conciliator at the request of the union representative that a stipulation be drawn to the effect "that if the War Labor Board ordered what we said were stabilized rates, it would be final and binding."   The stipulation provided for submission of the wage dispute to the War Labor Board, defined the issues to be submitted, and contained the provision that a "final disposition of the issues in the case

will be made by directive order." On submission to the War Labor Board the hearing officer issued a report deciding the issues contrary to the company's contentions. Thereafter a directive order was issued by the regional labor board adopting the report of the hearing officer and ordering the company to institute the wage rates specified. A petition for review was denied by the War Labor Board on November 27, 1945. The War Labor Board ordered that the terms and conditions of the regional directive order govern relations between the employer and the union. The company thereafter refused to put the directive into effect. This refusal resulted in the proceedings before the Wisconsin Employment Relations Board. The complaint was based on sec. 111.06 (1) (g), Stats., which makes it an unfair labor practice for the employer "to refuse or fail to recognize or accept as conclusive of any issue in any controversy as to employment relations the final determination (after appeal, if any) of any tribunal having competent jurisdiction of the same or whose jurisdiction the employer accepted." It is contended by the company, (1) that as a matter of law a directive order of the National Labor Relations Board is not a final determination within the meaning of sec. 111.06 (1) (g), for the reason that it is nothing more than a declaration of the equities in an industrial dispute and that it has no legal sanctions; (2) that the parties did not as a matter of fact agree to accept the directive order as a final determination.

Upon the first question it is evident that, in spite of the advisory character of the directive and the lack of legal sanctions, the determination of the War Labor Board here is at least final in a procedural sense and that it has jurisdiction to make an advisory ruling.

We are of the view that the first contention of the company must be rejected if it agreed to accept the jurisdiction of the board. It is clear to us that if the company did so agree sec. 111.06 (1) (g), Stats., applies since the directive is final in a

procedural sense. It is, of course, true that the parties cannot enlarge the jurisdiction of the War Labor Board by stipulation but if they agree to accept its jurisdiction they must, under sec. 111.06 (1) (g), recognize its final determination or be guilty of an unfair labor practice. This section applies not only to the final determinations "of any tribunal having competent jurisdiction of the same" but also in the alternative to those "whose jurisdiction the employer accepted." There would be no legislative purpose in inserting this alternative phrase unless the statute meant to include cases where the tribunal did not have competent jurisdiction in the sense that it could initiate coercive measures to exact obedience to its determinations. The statute means that when an employer agrees to submit to the jurisdiction of a tribunal, and the tribunal makes what for it is a final determination of the matter, the company may not without committing an unfair labor practice decline to accept the determination as conclusive of the controversy.

We now come to the company's contention that the stipulation of September 22, 1944, does not constitute an agreement. The stipulation recites the inability of the parties to reach agreement by direct negotiations on certain disputed matters and that they "hereby agree through the United States conciliation service to submit their dispute on briefs to the National War Labor Board or to such agent as the board may designate. . . . It is understood that by this stipulation the parties waive a hearing before a hearing officer or before a panel, but that findings of fact and recommendations will be made to the board based on the briefs, and that a final disposition of the issues in the case will be made by directive order."

It is further stated that the referral is in accordance with the War Labor Disputes Act and that "action by the board upon the dispute will constitute taking jurisdiction thereof under said act. The parties have agreed to a submission of their case by joint briefs of the parties, and the directive of the board will be limited to the issues listed above." It is contended that

this stipulation was simply for the purpose of determining the procedural method in presenting the matter to the War Labor Board and that it amounts merely to a waiver of the more lengthy process involved in a hearing before a tripartite panel and an agreement to submit the controversy upon briefs. It is claimed that there is no evidence of a purpose to enlarge the merely advisory jurisdiction of the War Labor Board and that the agreement contains no stipulation to put into effect the advisory directives of that board.

These contentions cannot be sustained. The stipulation specifically agrees to submit a dispute to the War Labor Board. In accordance with the War Labor Disputes Act it is specifically agreed that action by the board will constitute the taking of jurisdiction and that the directive of the board will be limited to issues specified in the stipulation.

We are of the view that this plainly constitutes an acceptance of the jurisdiction of the board and that the alternative phrase of sec. 111.06 (1) (g), Stats., requires the company to accept as conclusive the final determination of the board and put its directive into operation or be held to have committed an unfair labor practice. This does not constitute an enlargement of the jurisdiction of the board. It simply constitutes an agreement to submit to and put into effect the final determination of the board as conclusive of its controversy, otherwise there is no point to the stipulation. The procedural portion of the stipulations are plainly additional to and regulative of the agreement to submit. We deem it unnecesary to examine the question as to what relation this has to a refusal to accept an award upon arbitration. The matter is plainly within the letter and purpose of sec. 111.06 (1) (g), and the Wisconsin Employment Relations Board and the trial court properly held to this effect.

*By the Court.*—Judgments affirmed.